We have one case this morning, number 14-1648, Antares Pharma Inc. v. Medac Pharma. Before we start the argument and the clock running, I want to raise with both counsel what we see as a significant problem with the confidentiality markings in both sets of briefs, which mark as confidential what seems to be argument by the expert witnesses as to what the situation is here. And we're having difficulty in seeing how that could possibly be appropriately marked as confidential. And would you please address that? Yes, Your Honor. Imran Ali for Antares. Perhaps we could just confer to make sure that there would be no objection. We wouldn't object to expert testimony being designated confidential, but because that had been the designation below, that's what was carried forward. But if counsel would agree, we don't have any problem. We agree, because our designations were based largely on our opponent's designations. We have no confidentiality problems. We can say anything as far as we're concerned. We'd like you then, I think, to file new briefs deleting the confidentiality markings. We'll do it before you, Your Honor. And so that the briefs are public in their entirety. But this is an example. You should not be marking this stuff as confidential in the district court. That's not appropriate. But take out the confidentiality marking. Okay, why don't we start the argument. May it please the Court. The recapture rule should not apply to an invention disclosed, but not claimed in the original patent. Here is a district court legally erred in using the recapture rule to deny Antari's motion for preliminary injunction. Antari, in this case, used the recapture rule to claim an invention that had previously disclosed in the original patent, but did not claim in that original patent, the 015 patent. It therefore, in reissue claim 31, sought to claim that particular embodiment, that invention, a push-button embodiment of an automated injector. And for that reason, the preliminary injunction should have been granted because the recapture rule should not have been addressed in the first place. This was an overlooked aspect. This was a separate invention. And the three points that I'd like to discuss today are, one, the case law with Mostafa Zadeh and Newman, two, the statutory rule and the policy behind surrender and how it relates here because there was no surrender of the subject matter later claimed, and three, to the extent the claim construction issue is reached, that the claim construction also favors Antari's and favors the finding of infringement and, therefore, should be reversed and remanded for any of these three reasons. Talking about the case law, neither of the set of briefs discusses the Supreme Court's decision in U.S. Industrial Chemicals. Are you familiar with that case? No, Your Honor. I'm not familiar with that. I'd be happy to follow up on that. Well, it sets forth a standard for claiming a new invention in reissue, which seems to be fairly strict. And this is the site to the case is 315 U.S., 668, and this language appears at page 676. It says, It is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original. And there are later cases in our court discussing what that means and raising the question of whether a slight change in language in the 52 statute made this test inapplicable. But if that were the test that I just read to you, would the specification in here disclose the separate safety feature invention that you say exists? Yes, Your Honor. And the reason for that is because the case law, including later following cases looking at it in this court, have looked at the object of intent. So for the original patent test, have considered when the word intent is used, the object of intent. In other words, going back to a written description type of analysis. Well, you do, yeah. But the test is how strict is the written description requirement here? How clear does it have to be that the original specification set forth a separate invention related to the safety features? And looking at that specification, it doesn't seem to be particularly clear that there is a separate safety feature invention identified in the specification. Suggested, perhaps. But industrial chemical doesn't say that that's not sufficient. Well, I think under the written description cases, Your Honor, that the disclosure need not be expressly set apart as here is a separate invention and then it is claimed as a separate invention under both the original patent and written description guidance of the court that as long as there is a disclosure from which one of ordinary skill in the art can discern the invention and its parameters, then that would be adequate to be separately claimed. Well, I guess what I'm raising is whether that really is the right test. You're right. It doesn't have to be in the original claims, but it does have to be in the specification. And industrial chemicals suggest that there's a stricter requirement here that goes beyond the traditional written description requirement. In other words, you really have to be identifying a specific identifiable separate invention in the specification, and I question whether that's the case here. And I do not believe that should be the way that the rule is applied here, even if the rule were to say that something has to be separately explained and separately identified, because the provision that we're looking at in the specification, that's column 12, lines 10 through 14, do say alternatively use that transition phrase and then describe the embodiment, which has a push button. And that push button embodiment that locks and unlocks isn't disclosed as such anywhere else except it says in that column 12, lines 10 through 14, to say here's the alternative embodiment. But there's nothing in that language that says that those safety features that you're referring to apply to all injectors. I mean, the entire patent is directed to a jet injector. Your Honor, I agree that the examples are jet injector examples, but as to the alternative embodiment, there's also nothing limiting. And that should be the key question here, Your Honor, under the law of surrender or claim construction. Is there something limiting or disclaiming the embodiment to say that it only works with jet injectors? And there isn't such a disclaimer. And furthermore, to the point of a person of ordinary skill in the art, here we know from an expert when asked about those features that yes, indeed, there's an understanding that it could be used without limiting to a jet injector. That's exactly what Industrial Chemical rejected, saying that you can't bring in expert testimony to sort of reinterpret the specification. It has to be clear that you're really claiming something separate. And as Judge Marina points out, all of this discussion of safety features is in the context of jet injectors. There's nobody saying, there's no passage in here saying, well, you know, even if it's not a jet injector, the safety features are separately important, right? It doesn't expressly say that you can use these affirmatively with any kind of injector, and the question is whether that's been a requirement. And I understand what Your Honor is reporting about the Supreme Court case and how the statute's been applied in this court has included, for example, the Lampe case that was recently decided, wherein the court found that even though the disclaimer, the disclosure in the patent referred to one particular embodiment, the claims could be broader so long as they were taught. So I was referring to the expert testimony in this context to say that it is taught in the specification that this embodiment exists. But how is it taught in the specification that this embodiment exists with respect to something that's not a jet injector? And how it's taught with respect to what's not a jet injector is the specification teaches to a person more or less in the art that for a safety feature that has the push button and the needle guard that's locked until the push button is ready for use, that structure, that set of combination of features, is not itself limited to a jet. So the example that's underlying it in the patent is a jet injector, but that safety feature is more universally applicable to anybody. And that's because these particular safety features really are completely independent of the performance, the injection performance that's represented either by the term jet or by the more specific limitations added during the initial prosecution about through the axial opening in the needle and through an elastically deformable mechanical member, and so on. Exactly. Yes, Your Honor, we agree that the first claims in the original 015 were pursued because of the jet portion of the invention. And in fact, stepping back just to Section 251, when we're looking at what are the mistakes that should be allowed, one of them is here the overlooked aspects, as was written by Mostafa Zadeh and Newman, that if there was something overlooked, then it can be reclaimed by reissue. Yes, but I'm not sure that's true unless there is a specific description of the overlooked aspect. And here, as I understand it, you're not able to point to anything in the specification that identifies these safety features as being significant apart from the situation where they're combined with the jet injector, correct? That's right. It doesn't expressly say that you can use it universally. And the question is whether it's required to say it's universally or whether the example is adequately disclosed where someone, as long as the person is skilled in the art reading the specification, understands that the inventors had possession of the invention. And here in that written description or original patent context, that's the features themselves, independent of what kind of injector they're on, because the features were separately described and described in a way that would function with any injector. And that structure is there in a way that was claimed differently in the reissue patent. And another example for showing why that was different has to do with the prosecution history. If they were limited to jet injectors, then it would be very easy on reissue to have either rejected the claim, not supported, or more likely to say that it's covering the same subject matter and the word jet is in there. But here, Antares had to separately distinguish on reissue the same prior art that it had already distinguished in the original patent. The importance of that being the jet features, which were more prominent throughout the specification, were claimed originally. And the overlooked aspect, or the separate invention here of the push button with the lock, that was generally overlooked and claimed separately on reissue. But it had to distinguish, again, the same prior art, showing that it was a distinct embodiment in the specification and described as such. And that's where the alternative language of that column 12 embodiment is important because it doesn't expressly say, I agree, it doesn't expressly say you can use this with any kind of injector. But the teaching of that embodiment in the safety features context is that you can use it with any kind of injector. Why wouldn't we look at that as further narrowing the scope and narrowing the safety features to just jet injectors? You're trying to expand the scope because you're saying that it's applicable and you can do that. But when you look at the 015 patent, it seems to me pretty reasonable to say that any safety features that are disclosed, you've limited those to just jet injectors because the entire patent is all about jet injectors. It's not about any other type of injector. So as a matter of claim construction, there is the support for saying that if there is the present invention in that kind of language where it's only the one embodiment, it can be limited to that embodiment. Here, the present invention is used in different ways throughout the patent. So, for example, saying the embodiment or one embodiment of the present invention, showing that it's really an example of the present invention. But to Your Honor's point that even that is still a jet limitation, even if the claims were limited to a jet injector, a jet injection device was the term, that should have been construed differently. It should have been construed as the express definition in the 846 patent and not another definition taken from extrinsic sources and another patent in an unrelated family. If I'm remembering right, and correct me if I'm wrong, when the examiner on reissue allowed the thing, he actually, I think, said that this is limited to jet injectors. Am I remembering that right? And if so, what do I make of that? No, Your Honor, the reasons for allowance for the reissue aren't in the record. No, I know, but they're on the PTO website. They're on the PTO website. It's a public record. And it does say in the first line that it's jet injectors, all of the type, but the key to that is the quotations in the rest of that provision, which refer to the claim limitations and use all of those as the key distinguishing features over the prior art. Had it been just the jet by itself that the patent office viewed as the distinguishing feature, then there would be no reason to add any of these other terms or limitations because that jet distinction had already been addressed in the 015 hearing. Can you help clarify for me a point of confusion?  This language of overlooked aspects in a passing kind of way that I think the one clear thing about it is that we haven't really made clear exactly what the status is of that. How would it be possible under the fairly frequently repeated doctrine when there is an amendment like the amendments here to add some very specific claim limitations about the axial opening and the particular mechanism of creating the force for the injection, better than not in the reissue claims? And we say, presumptively, there's a surrender. And then we specifically say that if you add other stuff, if it's unrelated, that doesn't save it. It feels to me like you're saying something that is an overlooked aspect would be by definition unrelated, and you want to turn that into a ground for saving the claim as opposed to avoiding the recapture rule. And I'd like you to explain how those two things square. I do agree that that's what we're requesting, and it's squared in the following way, that the recapture rule is actually itself an exception to Section 251. Congress has allowed claiming broadly and differently things that except for when there's a recapture situation where something surrendered has been given up. And so the policy and the case law, I think, can be reconciled in the following way, that if there's an overlooked aspect that's different, it doesn't require opening the recapture rule door, if you will, because those three steps apply when there's a surrender. And that's why the fact pattern is so common, that you've got a claim on the original, one word is either deleted or expanded, the rest of the claim remains the same. And in that context, that's a recapture concern. Why doesn't it make sense to view all of this in the following way? It's your job before the actual issuance of the first patent to review the specification and figure out if there are overlooked aspects, and if so, you file a continuation application. But if you don't, and the thing issues, then you are within the realm of recapture doctrine. And what you very specifically added by amendment here to focus not only on a performance feature that was in there originally, namely jet, but to further refine it and say, here's how the jet, it has to be high speed, it has to go through the tip of the needle, it has to be by something like a spring, that at that point, unrelated things just don't count. Definitely an alternate pathway is that continuation pathway. But so too within the two-year window, and that's the congressional balance that Heumann discusses, for example, wherein the two-year window allows for change claims because as long as there's something disclosed in that original patent, that's what could be legally claimed. And even if it's not just a modification of an existing claim with all of the baggage of the original patent, it can be something different. Wadlinger is an example that says it can be something different and claimed as such. The NPP, of course, gives those examples as well. But I think the reason for that rule is continuation is one issue, but also somebody looking at the issued patent, an inventor having a discussion with counsel, hey, these are the claims, but what about this thing over here? That's what that two-year window allows as a sort of discussion. And Section 251 literally allows for changes which are made by mistake. And so for that reason… But the problem is the way these reissues are secured is just by checking a box on a form. And if there really was a separate invention, I mean, it would seem as though it should have been claimed as a continuation or a divisional. And in some circumstances, your failure to file a divisional will be a bar to a reissue application. But it seems to raise concerns about evading the co-pendency requirement with respect to continuations and divisionals. It could, but there are two tools. And Wadlinger was an example, Your Honor, where the original patent had canceled claims. Those were, rather than do a continuation on the canceled claims, the patentee sought the reissue tool to use those. And because it was a different invention, that was allowed. So there was the Zeolites example, but the reissue was focused on using Zeolites in a particular way, cutting hydrocarbons. And as to that application, because it was different, although continuations could have been used, they weren't in that case and they weren't in this case, just from timing issues. But that two-year bar or two-year window, I suppose either way you want to look at it, does allow for the expansion of claims and the change of claims and the covering of subject matter that was overlooked, whether it be different species, embodiments, or inventions. And that's the language that was used in Mostafa Zadeh, Newman, the MPP, and Ford. One final question for me at this point. Given Claims 16 and 17, which quite specifically are focused on safety features with regard to protecting the user against the needle, how is it possible to say that when repeatedly the performance features were stressed and then even narrowed, that that didn't surrender claims without those performance features that added nothing more than something in the family of needle-protecting features, safety features? Sure. To respond to that, but I think the most direct, Your Honor, is that the umbrella of safety features is there, but the overlooked aspects can still be referred to, even an aspect of the safety features that had been overlooked in the first place. And here for Claims 16 in particular, or 17, any of those, none of the original patent claims use pushbuttons at all. They don't have that embodiment covered because that's that alternative language in Columns 12 that I'm referring to in Lines 10 through 14. So, yes, can a needle cover also be a safety feature? It can be, but it functions very differently in those Claims 15 through 17 where the needle guard is the nose-activated device. Pushing on the needle guard fires the device, whereas the Claims 31 is very different. It's incompatible. The needle guard is pushed back, but that only unlocks the pushbutton, which is then pushed to actually trigger the device. So that's what makes it not only different, but also differently claimable, and we think that for that reason that was overlooked simply because the focus is over here on, hey, we have a jet injector that's needle guard or nose cover activated, but what about this pushbutton thing? That was there to disclose that's our invention. Should we claim it? Yes, we should, and that's where the reissue would be. In the case of HESTA, we set a three-part test, and the first part of that test is to determine what respect the reissue claims are broader in scope than the original patent. Doesn't that, wouldn't that require us to look at what is it, what's the scope of the original patent? And the original patent, the 015 patent, is, it seems to me, the scope of it is needle-assisted jet injectors. During the prosecution, you disavow or you try to overcome Kramer and Prior Art by limiting all this to needle-assisted jet injectors. So your safety devices, if you overlooked something, a safety device, and you came back later and said, we overlooked this particular safety device, it seems that you'd have an argument if you're arguing that that is related to needle-assisted jet injectors. But here, you're trying to narrow scope to something that wasn't related to the original patent, aren't you? Yes, Your Honor, and that's, this is one of the reasons we're asking for two paths to be considered. The recapture rule being the three steps, but that that should be avoided, and just falling back on the Section 251 and the reissues more generally when there's an overlooked aspect. Because otherwise, as you... If you fail the three-part test, why should we go any further? We should not even look at the three-part test. If we're doing this under the overlooked aspects, Dr. Neal...  Hester said we should as part of Step 3 of the analysis, but as later, I think, clarified by Mostafizadeh and Newman, which go back to the language and the Wadlinger-type analysis, if there's an overlooked aspect, that's different. So that's just... It's not... It doesn't trigger, to use the word of Mostafizadeh, or it's a separate inquiry, to use the word of Newman, because if there's an overlooked aspect, we don't need to go down into the recapture rule. The more glaring the failure to claim the alternative invention in the original specification, the more likely it is that you can get a reissue, because then you don't have to worry about the recapture test. In a way, that's true. And I think that's actually consistent with Hester in the following way, that Hester, if it had really meant that overlooked aspects also have to be related to the surrendered subject matter, well, that would be internally inconsistent, because at the one hand, it would say, here's overlooked aspects that can't relate to the underlying subject matter, but on the other hand over here, there is the subject matter that's surrendered. It has to be limited, and any material limitation has to be related to the surrendered subject matter. So it would be both canceling each other out, in other words. It shouldn't be the case, even under the reading of Hester, that the overlooked aspects have to be limited to what was surrendered. It should be different, and if it is different, then it's a different pathway, and the recapture rule is not invoked in the first place. If there are no further questions on that point, I do have one other thing I'd like to ask you about, and that is the argument that you make beginning at page 35 of the Blue Brief, which frankly, I don't understand. Okay. If there's a violation of the recapture rule or the same invention requirement, then the new claims are invalid. So what is the point that's being made here, beginning on page 35? Sure, your Honor. To take a step back, the district court here used the recapture rule analysis, but the conclusion, the holding, page 16 I believe it is, was essentially that MEDEC did not infringe or had shown a substantial question as to infringement. It doesn't infringe because the claims are invalid, right? No, it says for the same reasons as the JET analysis considered for another patent, the 631 patent. So I think, your Honor, that it's basically using it as a tool for claim construction without saying so, sort of like what happened in MB01, that basically the district court says there's a recapture rule problem. But I'm right. If there's a violation of the recapture rule, the… It's an invalidity claim. It should have been an invalidity claim. It's not a claim construction issue. I agree, your Honor. We're addressing it here because the district court viewed it as a claim construction issue. And to the extent that we say here, recapture rule is not a problem, but claim construction should still be limited to a JET injection device for whatever reason, then that JET injection device definition should be the one in the 846. And that's where this comes into play. Okay. Thank you. We'll give you two minutes for rebuttal. Thank you. Mr. Harnack? And if you need a little extra time, don't worry about it. Thank you, your Honor. May it please the court. Good morning. A patentee cannot invoke the words overlook aspect to tie the district court's hands, as Antares is suggesting. Antares is proposing a rule that says if a patentee, a couple of years after the fact, decides they want to point to something in the specification that they did not claim, they can say overlook aspects. And that prevents the district court from doing the three-part analysis that is expressed in Mastodon, Hester's, and Yeoman. That cannot be the law. Any time there's a potential recapturing of surrendered subject matter, the district court is entitled to, and in fact obligated, to make sure that the surrendered subject matter is not recaptured. If Antares' logic was to be followed, any patentee years after the fact could simply say, I overlooked a push button. Judge, you cannot even consider whether or not in our reissue claims non-jet injectors, which we surrendered by argument and by amendment. That surrender just goes away because we're pointing to the overlook aspect. That's not the law. That's not 251. That would eviscerate the question of 251, which has its rooting in the public notice function. And to address your Honor's question to start this, whether or not the industrial chemicals logic should be applied strictly, we would say it should. The industrial chemicals logic. That's a different point, isn't it? Industrial chemicals is not talking about whether you treat this as a recapture problem. It's talking about the same invention requirement. Yes, and that's what I was going to try to say. The industrial chemicals question is addressed in connection with Amos on the original patent issue. Amos follows that logic. The test that is set forth on what's taught in the specifications does an ordinary skilled worker looking at the four corners of the patent, of the original patent, decide what is specifically said in the words of the patent. There's no dispute here that the words of the patent talk only about jet injectors. It's not a separate invention when you talk about the safety features because if you look at the specification itself, there are a couple of examples where the safety features are talked about specifically as a function of jet injection. These specific safety features are used because in a jet injector there's such high velocity that some components become a dangerous ram. The prior art did not address that. These safety features are taught in conjunction with jet injectors. Same thing. They say the prior art tried to address questions about whether or not there are safety features with jet injectors, and they failed because they had a tendency to slow down the injection time. And they say, therefore, there's a need in the art for jet injectors with safety features. There's not a word in the specification about the use of safety features with non-jet injectors. There's not a word in the specification about non-jet injectors, period. Now, when you apply the industrial chemical logic, it follows through in cases that the court has decided, Ariadne and Lockwood, where the question is not what a person of ordinary skill in the art would find obvious from the specification, but rather what a person of ordinary skill in the art would read the specification to say. And this is unrebutted. We raised this below. We introduced the declaration of Mr. Leinsink, who said, a person of ordinary skill in the art would read the four corners of this document to say, to read, to refer only to jet injectors. That's unrebutted. The first time we heard Antares' answer to the original patent question, what we consider to be an alternative ground for affirmance, which ties in very much to the public notice function of recapture as well. First time we heard that is in the reply brief on appeal. Mr. Fisher says that, their expert, their competing expert, says that a person of ordinary skill in the art might know it's obvious to use a push-button injector with non-jets, but there's nothing in the written words in the four corners that puts the public on notice that Antares could sometime later claim that there are non-jet injectors that could be used with St. Peter's. It simply is not there. Can you explain with some specificity, maybe you already have, but in which case tell me again, the particular safety features that appear in the reissue claims, the guard, the latch, and the push-button, in what mechanical way do those depend on whether the injector is a jet injector? In some ways they did, in some ways they didn't. The ways that they did were the two examples that I said. There may be more, but these are the ones that come to mind. There's disclosure in the specification that when you have the high pressure of a jet injection, you can cause a dangerous projectile, so you have to protect it. I think that's the latch, the needle guard, needle shield, which was in the original Claim 14-15-16. Is there a dangerous projectile? Dangerous projectile. What does that mean? The needle is going to shoot out? The safety aspects are necessary. This is at page 16 of our brief, and it's at column 6, lines 20-21, columns 7, 11-21 of the patent. Safety aspects are necessary to use with jet injectors because components can become dangerous projectiles due to the pressure and energy generated in jet injectors. At pages 13 and 14 of our brief, which is columns 2, lines 32-42, prior art efforts to shield the needle resulted in flowed injection times losing the advantage of jet injectors, so therefore there is a need for a jet injector with retractable or concealed needle. Now, as we pointed out, the whole notion of overlooked aspects is basically a ticket. You check the box on an application to get a reissue application. You need to meet the error requirement in order to participate in the reissue process. Here, there is nothing in the specification, nothing in the prosecution history that says anything to do with safety features was an overlooked aspect. That is a post hoc contrivance we would submit. When we look at the... I'm sorry. If it was overlooked, you wouldn't expect there to be material in the original prosecution history referring to it because then it wouldn't be overlooked, would it? No, that's not correct, Your Honor. I think you have to fill out a declaration. Typically, in a reissue application, there is the attorney swears out a declaration that says I threw error... There are a couple of them here. In the reissue prosecution application, you have to declare at least one error. Right. I thought what you just said was that to be overlooked, there had to be some reference in the original patent's prosecution history. No, that's not what I intended to say. Could you expect silence on this subject for it to be actually overlooked? In the original, yes, you expect silence. But in the reissue, if truly the motivation, if truly the error was to have reclaimed something that was overlooked, you would think that that would be the thing that the attorney would swear in the declaration. And what we see in the briefing below, Antares did not address the error requirement. In fact, we made the demonstration that the non-jet injector feature, which was surrendered, had been recaptured during reissue. There was two sentences that appeared in the briefing below about the overlooked aspect, and nowhere in the briefing did Antares mention the overlooked safety features, the specific push button. They just said safety features generally. And then on appeal, when we pointed out that there were, in fact, a whole host of safety features already claimed, then all of a sudden, the push button became the key. So I submit there are several problems with Section 251 with the 846 patent that we showed that there is a substantial likelihood that they will not be able to be successful on merit. They failed the recapture test because they distinguished both through surrender and by amendment of the claim to put the words jet inject in the body of the claim. They surrendered non-jet inject to get around from the prior art. Antares argues that recapture doesn't apply here because they never surrendered push button. That's not the issue. That's a diversion. The question of what was surrendered is jet versus non-jet. And when you do the three-step analysis... Can I ask? I mean, is it only that question, or it seems to me there are two things going on here. One is, I mean, as to surrender. One is as to amendments, and the other is not. The fact is the originally filed claims all said jet. Now, maybe it's possible to say that under the Ball Corporation case, its statement, not its strict holding, that when they filed claims, full stop, recapture, end of analysis. Put that aside for a minute. The fact is they added amendments with the axial opening, the elastically deformable mechanism for creating the force, and then required that that force produce a high-speed jet through the axial opening. Those are all erased. Forget about arguments. Just focus on those amendments. Those have been undone by the reissue, and what they say is that the supposed narrowing is actually unrelated to that. So unless there's this whole separate overlooked aspect, forget about argument. There's amendment-based recapture, right? There's both amendment-based recapture and argument-based recapture. I guess I'm not yet persuaded on the argument. Okay. Because if there had never been an amendment, it seems to me an overlooked aspects doctrine makes a kind of intuitive sense. Nobody is focusing on these particular safety aspects. Put aside amendments. Put aside the ball, the ballpoint. How, in the absence of some statement that is not in the 015 prosecution history, does one get a clear and unmistakable argument that non-jet injectors with these safety features were deemed unpatentable by the applicant? The subject of safety features just never came up. The subject of safety features was these safety features. Let's call it push-button just for ease of use. They didn't claim push-button. They claimed others. But you have it right. The three-step test says, and North American canister, I think that's the name of the case, says you do it on a limitation by limitation basis. You look at what, step one, is the claim broader? I submit the claim is broader because it used to be jet injector and now it's not jet injector. Does the broadening relate to surrendered subject matter? Jet was surrendered, I would submit, both by argument, which is what the Hester's case says. Argument is every bit as persuasive as amendment. And in response to the examiner's objection, they added the specific jet inject limitation. So now you say, OK, jet inject is taken out in its entirety and that's significant in the Mostovizadeh case. So the third step you take under the established three-part analysis is, does any narrowing here, addition of a push-button, does the addition of a push-button work to avoid the creeping in? I just want to interrupt. I'm in complete agreement that when they say these aspects were overlooked, whatever else it means, it means they're unrelated to what was given up in the first thing. So they need an entirely distinct doctrine that says overlooked aspects can be claimed on reissue, even if they would otherwise flunk the recapture test. So I guess I want to just focus. Let me ask this question. Have we ever said, spoken about overlooked aspects or ruled on overlooked aspects in the context of a non-amendment, in the context of an amendment case as opposed to an argument case? Hester was distinctive because it was the first case in which we had recapture based on argument, not amendment. And then the two later cases, I guess, both involve amendments, right? Mostovizadeh involves an amendment to remove the word tertiary attachment. But we didn't have to rely on this overlooked aspect. I'm not sure I agree with that, Your Honor. I think if you read Mostovizadeh, my reading of it, at least, is the patentees amended the claims to put in tertiary attachment pad to overcome the priority. They pointed to three other limitations, the bus bar limitations, that these materially narrow. The court evaluated on two grounds those three bus bar limitations. First, the court said, these weren't really overlooked at all. Second, the court said, even if they were overlooked, they did not materially narrow the subject matter that was surrendered. They were wholly unrelated to the circular attachment pad. Therefore, whether they narrow or not is utterly irrelevant. There is a capture with respect to circular. To make the analogy, if Antares here wanted to try to claim a push-button safety feature embodiment for jet injectors, they would be fully entitled to go to the patent office and try to do that if they could find an attorney to truthfully swear that they had overlooked push-button injection features in the first place, rather than having taken a look at the developments in the marketplace, realizing that MEDAC was developing a push-button safety feature and writing a claim to try to cover it. I'm sorry. Maybe I misunderstood. Did you just say that if these truly were overlooked aspects, then 251 would not bar the claims? No, that's not what I said. If these were truly overlooked aspects, presumably, they would have an attorney that said, this is the nature of the error that I made. The error requirement is, there's the error requirement and then there's the original patent requirement. I saw your position as it wouldn't matter. The fact is whether they were overlooked or not, 251 still guards the claim. If they were overlooked and there was no surrender, that's the key issue, Your Honor. If push-button safety features were truly overlooked and they wrote a claim in such a way that they were not trying to recapture the rendered subject matter, they may be able to get that claim. If they could find an attorney to truthfully say, well, this is what I overlooked, rather than saying, well, geez, let me try to shoehorn a claim in to focus on a competitor, just like the… Does your position require us to say that that passage in the MPEP, you know which passage I'm referring to, lays out an example and saying this is really completely irrelevant to that, is wrong? Well, Your Honor, it's wrong, but it's certainly distinguishable. The example that they use in the MPEP talks about plasma ion implantation. And the key point of that is when you have molten liquid bath ion implantation rather than plasma stream ion implantation, the surrendered elements with respect to molten bath, pressure, and temperature are utterly irrelevant because as I understand it, plasma stream has to do with the speed of the particles being implanted. So with respect to that narrowing, it's a wholly different invention in that instance. So it's utterly irrelevant whether or not there's pressure and temperature when you move to plasma stream, because pressure and temperature only relate to molten bath, and the reissued applicant cannot take that claim to charge of infringement someone who uses molten bath because they are totally separate. Again, hearkening back to the public interest, when someone makes an argument that we are different from the prior art because we are a jet injector versus a non-jet injector. Jet injectors are superior to non-jet injectors. The Tromso case. Jet injectors are structurally different. There exists a need in the art for jet injectors with safety features. You cannot later say, well, we really meant to claim non-jet injectors. It's a separate invention because in the four corners of the document, there's not word one about non-jet injectors. There's not one word about a separate invention relating to non-jet injectors and safety features. A push button can be used on an electric cigarette, on a switchblade knife, on a safety catheter. Whether it's obvious, whether one skills in the art, like Mr. Weisinger says, well, the particular safety features that you use with jet injectors could be adapted by a mechanical engineer for non-safety features. All that shows is that it would be an obvious variant. Does not satisfy the 112 requirement that the written description is met within the four corners of the document. And this court is crystal clear on that in the Ariat and the Lockwood cases. Okay. Thank you, Mr. Harnett. Mr. Ali. Thank you, Your Honor. First, Your Honor, during the break, I was looking at Inri Amos, which did come up in the discussion. So as to that original patent question, and in fact, the Supreme Court case, there is a footnote two in Amos that refers to the case, and I think, fortuitously perhaps, is consistent with the analysis that I provided, which is that to the extent that the Supreme Court was using the word intent, it had to have been to do some objective intent, which the footnote characterizes as the same as the written description test. And that's why in Amos, the holding entity is broader than that. I don't think it says it's the same as the written description test. But analogous to, I think it's the... Yeah, and the question is whether the industrial chemical case in describing what's required is perhaps requiring a more stringent written description test than might otherwise exist. And I don't think so, Your Honor, and the reason that I think Amos addressing that footnote on pages 618 to 619 ends up saying that as to original patent, in short, the absence of an intent, even if objectively evident from the earlier claims, drawings, or original objects of the invention, is simply not enough to establish that the new claims are not drawn to the invention disclosing the original patent. And that's where that footnote is inserted, which I take to be material because it's explaining that issue and saying that we don't need to go so far as an apparent intent as to one invention. I understand what you're saying, but I don't think Amos and Hester and these other cases are all that clear about the continued significance of that industrial chemical test. But I understand what you're saying. As to that issue, I appreciate it. And the last thing I'd like to do at the time is there's just a few issues that may be new, so to the extent they're very important, I wanted to make sure that I had a chance to address them. One, counsel had explained that Antares didn't mention pushbutton as the limiting type of safety features until reply. I take issue with that. Even in the introduction of our brief, it says pushbutton safety features. That's on page three to four. It says pushbutton safety features. And then throughout the discussion is, of course, in the context of those particular features. Second, I think counsel said it could be true that there is a recapture problem here by either amendment or argument, but importantly, only the argument issue was argued below. And I'm reading from page 15 of their brief, which specifically refers to the argument. Antares repeatedly acknowledges that Hester says that surrender can't happen through both amendment or argument, but that in this case, Antares repeatedly argued the jet injector and needle length limitations don't become a priority. Does the 015 patent specify the pushbutton safety feature? Does it use up those words? No. The 015 specification has the pushbutton and the safety features in that alternatively, and it refers to the alternatively of pushbuttons in the context of that whole column, which is safety from 11 to 12, about having the needle and having it be covered and having it be locked. But it doesn't use the phrase pushbutton safety features. No, it refers to the pushbutton, how it's locked until ready for use with the needle guard. And third, I just wanted to point out again that as far as the testimony of the expert that MADAC had, I think I heard, maybe I misheard, that that wasn't raised until our reply brief either, but that clearly was referred to in our opening brief on pages 28 and 29, referring to what one of ordinary skilled art would know could be used with that disclosure as to the safety features with any autoinjection that that was important. Did you submit contrary evidence, though, in the district court saying here's a reason that an ordinary skilled artisan would read the written description in a way that's contrary to what the other side said? No, we agreed on that point. So our expert agreed that the written description is not so limited. So their expert in the portion of the deposition, I know that counsel referred to the declaration, but in the deposition, that's where the expert was looking specifically at the claims and the questions were specific about, for example, looking at claim 31, is the pushbutton, is that limited to a jet injector? Answer, no, you could use a pushbutton like that in non-jet injectors or non-needle-assisted jet injectors. I'm sorry, maybe you can just clarify. I suppose I can check. I took your colleague on the other side to say that by declaration, their expert said that the written description portion having to do with safety would have been read by a skilled artisan as limited to jet injectors. Did he not say that? I don't recall that being said. I don't recall their expert actually addressing original patents at all, that the expert was addressing instead the other issues about infringement and invalidity and also didn't in that context describe that the examples were jet injectors as to invalidity and infringement, but not invalidity as to recapture. Right, I mean the reissue specification is the same specification. It is the same specification, that's right. But it wasn't a takeaway, for example, there was no opinion that the claim should be invalid because of that particular issue as to the original patent rule. The issue there was recapture and how there was something recaptured, but as to original patent, it wasn't like a written description test as to recapture was met or failed. I think Mr. Alley. Yes, that's right. Thank both counsel. If we give you two weeks to file the new briefs, is that sufficient time? More than so. Thank both counsel. That concludes our session for today. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m.